8980

ARTHUR ET AL. v. THE PEOPLES BANK ET AL.

(83 S. E. 778.)

BANKS AND BANKING.  LIABILITY OF STOCKHOLDERS.  SUBROGATION.

PAYMENT BY STOCKHOLDERS—SUBROGATION TO RIGHTS OF DEPOSITOR—
   AFTER-DISCOVERED ASSETS.—Under Const. 1895, art. IX, sec. 18, and
   Civil Code 1912, sec. 2660, providing that the stockholders of a bank
   shall be liable to the depositors in a sum equal in amount to their
   stock over and above the face value of the same, depositors alone are
   protected, and stockholders of a bank who are compelled to pay an
   amount in excess of the face value of the stock to pay depositors in
   full are subrogated to the rights of the depositors in after-discovered
   assets of the bank.

Before PRINCE, J., Union, May, 1913.    Affirmed.

Action by W. D. Arthur, H. K. Smith, Jos. E. Fowler.
and Commercial and Farmers National Bank, of Baltimore,
Md.; National State Bank, of Richmond, Va.; J. H. Wilkes
& Co., King Hardware Co., The Hill & Griffith Co., and
Mrs. Amanda McNeace, creditors proving claims, plaintiffs,
of whom Commercial and Farmers National Bank, of Bal-
timore, Md.; National State Bank, of Richmond, Va.; J. H.
Wilkes & Co., King Hardware Co., The Hill & Griffith Co.,
and Mrs. Amanda McNeace, are appellants, against The
Peoples Bank, of Union, S. C.; B. F. Arthur, Wm. H.
Gist, and H. B. O'Shields, as receivers of said bank; and
J. C. Sheppard, G. E. Tucker, Jesse Comer, Mrs. Susan
Tinsley, W. M. Hagood, H. K. Smith, R. S. Foster, R. E.
Palmer, Miss Sue R. Jeter, W. E. Colton, W. M. Garner,
Clarence B. Smith, J. D. Arthur, Mrs. Alice Arthur, Mrs.
Mary E. Moore, J. E. Beattie, F. M. Farr, Rev. C. C.
Vaughn, B. G. Wilburn, Exchange Bank and Trust Co.,
P. F. Foster, W. R. Walker, W. W. Colton, Mrs. Fannie
M. Duncan, Thomas McNally, W. F. Gilliam, W. G. W.
Going, Mrs. Lelia McNeace, Mrs. Mary G. Holmes, Rev.
W. A. Massabeau, Mrs. Jeannette Wallace, Dr. J. H. Ham-
ilton, Miss Sarah Ida Knight, Mrs. Sallie F. Wilson, Mrs.

S. J. Webber, and Mrs. Sallie R. Walker, stockholders of said bank who have paid their assessments, defendants-respondents.

From an order allowing the stockholders named to participate in distribution of assets, the general creditors of the defendant bank appeal. The facts are stated in the opinion rendered by Mr. Justice Watts.

*Messrs. J. Ashby Sawyer,* attorney for Commercial and Farmers National Bank, of Baltimore, Md.; *J. Gordon Hughes,* attorney for National State Bank, of Richmond, Va.; *John K. Hamlin,* attorney for J. H. Wilkes & Co., King Hardware Co., and The Hill & Griffith Co., and *J. Frost Walker, Jr.,* attorney for Mrs. Amanda McNeace, appellants, cite: *As to liability of stockholders:* Const. 1895, art. IX, sec. 18; Code of Laws 1912, sec. 2660; 53 S. C. 584 and 590; 57 S. C. 53; 43 S. C. 80, and note in 41 L. R. A. (N. S.) 981, 998 and 1000, 1002, *on the rights and remedies of a creditor who is also a stockholder of an insolvent corporation, as affected by his own statutory liability. The assets of an insolvent corporation are trust funds solely for the benefit of creditors, and no part should be paid over to stockholders until all debts have been fully paid:* 26 A. and E. Enc. of Law 1007, 1015; 45 L. R. A. 863. *The liability of the stockholders is primary:* 53 S. C. 590; 22 S. C. 292; 33 S. C. 530; 81 S. C. 495; 79 S. C. 1; 91 S. C. 163; 24 A. and E. Ann. Cas. 1912c, 398. *Subrogation not permitted in favor of one ultimately or really liable for debt discharged:* 27 A. and E. Enc. of L. (2d ed.) 204, 205, 258; 37 Cyc. 374; 34 S. C. 377; 71 Am. St. Rep. 36; 45 L. R. A. 863; 52 S. C. 467, 468; 58 S. C. 179; 68 S. C. 439; 1 DeS. 409; 24 Enc. of L. (1st ed.) 226; Speer's Eq. 41; 142 Cal. 147.

*Mr. Sawyer* also filed an additional argument, citing: *As to liability of stockholders:* 176 U. S. 521; 44 L. Ed. 571; Ann Cas. 1913a, 378, and note, pp. 384, 385; 10

23—99

A. and E. Ann. Cas. 774; Ann Cas. 1912b, 488, 491, and note; Ann Cas. 1913a, 719, and note, p. 723; 5 A. and E. Ann. Cas. 314; 55 S. C. 79; 66 S. C. 491; 197 U. S. 154; 3 A. and E. Ann. Cas. 500; 5 A. and E. Ann. Cas. 665; 19 L. R. A. (N. S.) 428; 66 L. R. A. 971, and note 973; 38 Misc. 606; 78 N. Y. Supp. 79; Civil Code of California, sec. 322, and cases there cited. *As to stockholder's right to subrogation:* 77 S. C. 305 and 310, and note thereto in 22 L. R. A. (N. S.) 442; 81 S. C. 244; Cook on Corp., sec. 218; 23 L. R. A. (N. S.) 190.

*Messrs. Wallace & Barron,* for respondents.

November 14, 1914.

Each of the Justices of the Court delivered a separate opinion, as follows:

MR. JUSTICE WATTS: This was an action by plaintiffs as stockholders thereof, for the purpose of placing the Peoples Bank of Union, South Carolina, in the hands of receivers. B. F. Arthur and Wm. H. Gist, by order of the Hon. D. E. Hydrick, then Judge of Seventh Judicial Circuit, were duly appointed receivers, and later H. B. O'Shields was appointed a coreceiver with Arthur and Gist, and duly executed bond, took charge of the assets of the said bank, and proceeded to administer the same. Creditors were called in and the appellants established their claims against the bank as nondeposit creditors, and under the terms of the order of the Court became the plaintiffs in the cause. Numerous depositors of said bank also established their claims against the bank as such. While litigation, which was protracted, growing out of the failure of the bank was going on, certain depositors, who had received dividends along with the creditors of said bank from the receivers from the general assets of the bank, brought an action in the Court of Common Pleas for Union county against the stockholders on their statutory liability to

depositors, and after protracted litigation a judgment was obtained in favor of the depositors against the stockholders and judgment duly entered thereon.   A number of stockholders paid into Court an amount sufficient to pay the balance due the depositors, after they had received their dividends, along with the general creditors of the bank, from the general assets, to wit: sixty-eight per cent. having been paid to depositors and all other creditors of the bank at this time by the receivers of the said bank from its general assets.   Some of the stockholders did not pay their *pro rata,* and it could not be collected out of them, and the others had to pay about sixty-six per cent. of their statutory liability.   After this from notes of the bank the receivers after much litigation succeeded in collecting about $4,000. The receivers now have this amount on hand, a portion of which was collected from the general assets of the bank since the payment of sixty-eight per cent. to creditors and the depositors.   The depositors have been paid in full by what they got as dividends from the general fund, along with other creditors, and the sixty-six per cent. assessed against and collected from the stockholders.   Out of this fund now in the hands of the receivers certain fees and cost must be first paid.   The appellants have received only sixty-eight per cent. on their claims, and the balance is unpaid.   Their contention in the Circuit Court was, and is here, that as general creditors of the bank out of the funds now in receivers' hands they are entitled to be paid in full, less proper fees and costs, before any of the stockholders, who are required by the judgment entered against them fixing their liability under the statute to pay depositors in full, under assessments made against them being sixty-six per cent., can be allowed to come in and share ratably in the fund now in receivers' hands and thereby be subrogated to the claims of depositors.   The matter came on for a hearing before his Honor, Judge Prince, who sustained the contention of the stockholders, and held that the

stockholders of the bank, who paid in their assessments under the judgment of the Court upon their statutory liability in favor of the depositors, have by this become subrogated to the rights of the depositors, and are entitled to share ratably, who have established their claims herein, and have not been paid in full in the distribution of the funds realized from the general assets of the bank. From this decree appellants appeal and allege error in this holding, and the question to be determined is: "How shall this fund now in the receivers' hands be disbursed?"

Article IX, sec. 18, Constitution of 1895, is as follows: "The stockholders of all insolvent corporations shall be individually liable to the creditors thereof only to the extent of the amount remaining due to the corporation upon the stock owned by them: *Provided,* That stockholders in banks or banking institutions shall be liable to the depositors therein in a sum equal in amount to their stock over and above the face value of the same." See, also, sec. 2660, vol. I, Code of Laws 1912, page 729.

The matters to be determined by this appeal have not been before any Court that I know of, and no authority can be found by me that aids me in arriving at a conclusion. There is no doubt that if the bank could have reduced to money all debts due it by any one when it was put in the hands of the receivers before any distribution at all was made, and before any assessment was made on the stockholders, the general creditors, including the depositors, would have shared in this fund ratably, and the stockholders would have been assessed in a less amount than they finally had to pay. The stockholders could have promptly paid into Court a sum equal in amount to their stock, over and above the face value of the same, and this would have gone to the depositors and left a large percentage to the general creditors, and at the same time the depositors, as creditors, would have shared in the general assets of the bank. The liability of the stockholders of the bank under the Consti-

tution and laws of the State is a *primary liability*. When they take stock they contract that in addition to a depositor of the bank becoming a creditor of the bank that the stockholders guarantee that they will become liable to such depositors in a sum equal in amount to the face value of the stock held and owned by them. Paying the amount of assessment by stockholders, as the law required, and as he had contracted to do, in no sense made the stockholder a creditor of the bank. They were only discharging a primary liability voluntarily incurred by them when they became stockholders in the bank and they are not entitled to be subrogated to the claims of the depositors. What they paid in was by judgment of the Court obtained against them after long litigation by them denying the right of depositors to make them liable. The language of the Constitution clearly shows that it was the intention to give the depositors of a bank an additional safeguard for their deposits, but in no way intended to abridge or circumscribe the rights of creditors against an' insolvent bank, or cause them to be postponed in any matter whereby a stockholder could be a preferred creditor and come in ahead of a regular creditor. To sustain the Circuit decree would make the depositor a preferred creditor. It would allow him to collect out of the stockholder, and then allow the stockholder to come in and collect ratably out of the fund with the creditor. I know of no law, or any reason in sense, morals, or public policy, why a stockholder in a bank should share with a creditor in the distribution of the fund of an insolvent bank simply because he has done what the law requires him to do—pay his primary obligation to the depositors. It would be contrary to public morals and good conscience to allow the assets of this insolvent bank to go to any one else than the creditors. Under the law the creditors are justified when they extend credit to a bank in thinking that they and the depositors are creditors, entitled to be equally paid out of the general funds and assets of the bank, and if there is

not enough to pay both then the depositors have the further right to call upon the stockholders to pay the amount fixed by their holding of stock. The funds of this bank are held by the receivers as a trust fund solely for the benefit of the creditors of the corporation, and no part of these funds can be paid over to the stockholders until all the debts and obligations of the bank are discharged; the payment of assessment by stockholders did not make them creditors of the bank; they were liable to the depositors under the Constitution and statute, and by paying simply discharged their liability, and when the depositors were paid they had no further claim to the fund in Court, and there is not equity enough in it to subrogate them to the rights that the depositors once had against the general assets as it would be an injustice to the general creditors, who have superior rights. There is no doubt that the debt, discharged when stockholders were paid, was really the debt of the stockholders. There would be no natural justice in allowing these stockholders to come in and share with the general creditors the funds that properly ought to be paid to the general creditors. I do not think that a stockholder of an insolvent bank can become a creditor and entitled to be subrogated to the rights of another because he pays a debt that the law recognizes as his debt and will force him to pay, but can only be subrogated in such cases as the law allows subrogation. I think the exceptions should be sustained and the judgment reversed.

Mr. Chief Justice Gary: This appeal involves the construction of section 18, art. IX of the Constitution, and raises the question, whether certain stockholders of the insolvent bank, who had paid the claims of the depositing creditors, are entitled to subrogation.

Section 18, art. IX of the Constitution, is as follows: "The stockholders of all insolvent corporations shall be individually liable to the creditors thereof, only to the extent

of the amount remaining due to the corporation, upon the stock owned by them: *Provided,* That stockholders in banks or banking institutions, shall be liable to depositors' therein, in a sum equal in amount to their stock, over and above the face value of the same."

The provisions of said section were formulated as a statutory enactment, in section 2660 of the Code of Laws.

When the first distribution of the assets was made, between the depositing and the other creditors, it was not then known that there would be any other assets to divide. And, when the Court thereafter rendered judgment, in favor of the depositors against the stockholders, it was then supposed by all parties in interest, that the amount therein mentioned, as the balance due the depositors, was correctly stated.

It was, however, afterwards discovered, that there were other assets that were distributable among the creditors, to which the depositors would have been entitled to a *pro rata* share, if their claims had not been paid by the stockholders.

To allow the stockholders who paid the balance due the depositors, to participate in the distribution of the subsequently discovered assets, would not deprive the nondepositing creditors of the right to a larger dividend than they would have received if the depositors had not been paid the amount due them by the stockholders, until all the assets had been distributed.

This is not a question whether the stockholders are entitled to participate in the distribution of the assets, until all creditors are paid, but whether they are entitled to recover by subrogation so much of the assets as belonged to the depositors, and to which the stockholders became equitably entitled, when they satisfied the judgment, which the depositors recovered against them, under a misapprehension of fact, as to the status of the assets.

It is only just and equitable, therefore, that the stock-holders should be subrogated to the rights of the depositors.

I concur in affirming the judgment of the Circuit Court.

MR. JUSTICE HYDRICK: The view taken by Mr. Justice Watts extends the· liability imposed upon the stockholders of banks by the Constitution and statutes to the protection of general creditors as well as depositors, which was not the intention of the lawmakers.   The Constitution and statutes limit the special liability of the stockholders to the deposi-tors.· The judgment should be affirmed.

MR. JUSTICE FRASER: I cannot concur in the opinion of Mr. Justice Watts.   I can state my position more clearly by an illustration.   Suppose a bank had a capital of two hun-dred thousand dollars; deposits of two hundred thousand; general debts, one hundred thousand dollars, and cash on hand, one hundred thousand.

The depositors get from the bank 33 1-3 per cent., or, in round numbers, sixty-seven thousand dollars, and from the stockholders one hundred and thirty-three thousand dollars. The receiver then collects from the assets of the bank sixty-seven thousand dollars.   This money, being the funds of the bank, the general creditors claim it all, and the Court allows the claim.   The general creditors are now paid in full. Unless there is a right of repayment, there is no remedy for the stockholders.   Taking the available assets of the bank as one hundred and sixty-seven thousand dollars, the gen-eral creditors are entitled to fifty-six thousand dollars, *i. e.,* their one-third of the assets, but they have received one hundred thousand dollars.   The stockholders are liable for eighty-nine thousand dollars and have paid one hundred and thirty-three thousand, or forty-five thousand dollars more than their liability.   This would make the stockholders' liability a security for the general creditors, as well as for the depositors.   (I write in round numbers.)   The stockholder

is not entitled to be refunded the whole amount he has paid out, but only the excess of his payment over his liability.

As I see it, a different rule would put a premium upon dilatory proceedings on the part of responsible stockholders, and thereby delay the depositors in securing a repayment of their deposits. The manifest purpose of the Constitution, of making deposits secure and easy to recover, and thereby increasing bank deposits and keeping money in circulation, will be defeated.

Besides that, if the stockholder's liability is entirely original and independent of the assets of the bank, then the general creditor, under the "two-fund doctrine," will have the right to come into Court and require the depositor to first exhaust the stockholder's liability before the depositor can participate in the funds of the bank.

The disaster will not be confined to the depositors; for if the stockholder is liable to be called upon to pay the full liability for the benefit of the general creditors, then men who have money to invest will not dare to become stockholders in banks. If the Constitution and statutes had intended to make the stockholders liable directly to the depositors and indirectly to the general creditors, I am satisfied they would not have limited the stockholders' liability to the depositors. The only way I can see to make the depositors reasonably safe in getting a speedy return of his money, and at the same time to preserve the integrity of the stockholders' liability, is to do what I think the Constitution and statutes provide, to wit, give the depositors the corporate liability and also the stockholders liability, and, if the stockholders pay more than the circumstances require, then return to them the excess.

Judgment of the Circuit Court affirmed.

MR. JUSTICE GAGE: I am of the opinion the Circuit Court granted the nondeposit creditors too much when the fund now in issue, about four thousand ($4,000.00) dollars, was

ordered to be prorated betwixt them and the paying stock-
holders; that fund belongs exclusively to the paying stock-
holders; the nondeposit creditors are entitled to no part of it.

The words of the Constitution of 1895 govern the issue
made here; they alone create the individual liability of the
stockholder.

"The individual liability of stockholders in a corporation
is always a creature of statute. It does not exist at com-
mon law. The first thing to be determined in all such cases
is, what liability has been created." *Terry* v. *Little,* 101
U. S. 217, 25 L. Ed. 864.

The Constitution of 1895 thereabout is unlike that of
1868; the difference between them is fundamental.

Under that of 1895, no individual liability for a bank's
debts attaches to stockholders of bank, *except by the proviso
of section 18, article IX.*

The case of *Parker* v. *Bank,* 53 S. C. 583, 31 S. E. 673,
had not then been decided in 1895; and it had not then been
determined that stockholders in banks were personally liable
under the Constitution of 1868 to all or any of a bank's
creditors. Such liability was both affirmed and denied on
the floor of the convention.

When section 18 of article IX was reported by the com-
mittee it excluded any liability. (Proceedings Const. Con.,
27 Sept., 1895, page 7.)

The convention wisely concluded, that the public which
put its money into banks on deposit, generally without inter-
est, and subject to check, ought to have it back promptly and
it ought to be secure from loss.

Thereby the people would be free to put money into banks
for public use instead of into stockings for no use; and
thereby depositors would be paid beyond peradventure.

It is true, the stockholder's individual liability is primary;
he incurred it when he signed the stock subscription; but it
is not a liability of any sort to anybody except the deposi-

tors; it is not, by word or by implication, a liability to the note or other creditors of the bank.

If, then, the stockholder did not owe by promise the note or other creditors anything, then the note or other creditors have no right to lay hands on the stockholder's money.

It is immaterial that the money now at issue is the specific money of the corporation, confessedly derived from its assets. Had it been in the till of the bank aforetime, that is, before the stockholders paid the depositors, it would surely have been paid to all the bank's creditors, and the stockholders' payment would have been reduced that much, to wit, by $4,000.00.

If the $4,000.00 had been discovered at the instant of the proposed payment of the stockholders, then it would have been paid out to the relief of the stockholders by that much.

That it was discovered after the payment by the stockholders cannot alter the case.

It is not worth while to *name the remedy* by which the stockholder gets back his money; thereby confusion sometimes arises.

The stockholder ought to have it back, because he ought not to have been called on to pay $4,000.00; for the corporation in fact had the $4,000.00 and did not know it.

I am of the opinion the appellants are not entitled to the remedy they pray; and I, therefore, agree with Mr. Justice Fraser and Mr. Justice Hydrick.